# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 3623 | DATE | 12/02/02 |
| CASE TITLE | Relational Funding Corp. v. Variable Annuity Life Insurance Co. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiffs' Motion for Partial Summary Judgment (Doc. # 17)
Defendant's Motion for Partial Summary Judgment (Doc. # 20)

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs' motion for partial summary judgment (Doc. 17) is DENIED. Defendant's motion for partial summary judgment (Doc. 20) is GRANTED in part and DENIED in part. Status hearing set 1/16/03 at 9:15 a.m. before Judge Darrah in courtroom 1203.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | DEC - 3 2002 date docketed | |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | 15 docketing deputy initials | 31 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| JHC courtroom deputy's initials | | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

RELATIONAL FUNDING CORP., and )
RFC/CLC, LLC, )
)
      Plaintiffs )
) No. 01 C 3623
  v. )
) The Honorable William J. Hibbler
VARIABLE ANNUITY LIFE INSURANCE )
COMPANY, )
)
      Defendant. )

## MEMORANDUM OPINION AND ORDER

    Plaintiffs Relational Funding Corp. and RFC/CLC (collectively, "RFC") bring this breach of lease complaint against Defendant Variable Annuity Life Insurance Co. ("VALIC") under the Court's diversity jurisdiction. According to the Plaintiffs, VALIC returned 1,190 laptop computers that it had leased from G.E. Capital Corporation in damaged condition. Plaintiffs, who purchased G.E. Capital's rights under the lease shortly after its inception, filed this complaint, seeking $1,186,933.20 for repairs, casualty values, and associated costs and fees for the damaged computers. Plaintiffs also seek $861,711.78 in additional rent (through May 1, 2001) because VALIC returned the computers in unsatisfactory condition. After inspecting the computers, VALIC agrees that 955 of the 1190 laptops had some damage, and RFC now seeks partial summary judgment in its favor as to the amounts claimed for those 955 computers. VALIC has cross-moved for summary judgment, arguing that RFC is not entitled to casualty loss value or continued rent on equipment that has been returned. VALIC moves for partial summary judgment dismissing Count I of RFC's complaint

without prejudice to RFC's right to recover the actual cost to repair the damaged computers and dismissing Count II of the complaint with prejudice. The Court DENIES RFC's motion for partial summary judgment and GRANTS IN PART and DENIES IN PART, VALIC's cross-motion for partial summary judgment.

## I. Factual Background

VALIC entered into a master equipment lease with General Electric Capital Corporation to provide VALIC with 1,250 NEC laptop computers and other related equipment for a three-year period. The lease agreement provided that VALIC must "at all times operate and maintain the Equipment in good operating order, repair, condition and appearance, normal wear and tear excepted, and in accordance with its manufacturer's specifications and recommendations." The lease provided that at its termination, VALIC was responsible for returning the equipment back to the Lessor and required that "[a]ll equipment shall be returned to Lessor in the same condition and working order as when delivered to Lessee, reasonable wear and tear excepted." Lastly, the lease contained a risk of loss provision concerning damaged equipment:

> In the event any Equipment is condemned, taken, lost, destroyed, stolen or damaged beyond repair ("Casualty") prior to return to Lessor, on the next Rent payment date, Lessee shall pay Lessor an amount ("Casualty Value") equal to all Rent and other amounts due and owing on the date of payment with respect to such Equipment plus the Stipulated Loss Value set forth in the applicable schedule. In the event of a partial destruction of or repairable damage to any Equipment, the Lease shall continue with respect to such Equipment and Lessee shall at its expense promptly cause such Equipment to be repaired to a condition acceptable to Lessor. There shall be no abatement of Rent in such event.

Shortly after the lease began, GE Capital assigned its rights as Lessor to RFC, though GE Capital continued to collect rents on behalf of RFC and VALIC thus remained unaware of the assignment for the duration of the lease. RFC paid $4,110,000 for the assignment of rights, although

2

under the terms of the lease VALIC had but ten quarterly payments of $398,019 or $3,980,190 in total payments remaining under the lease, unless VALIC opted to extend the lease or to purchase the equipment at the conclusion of the lease. In September 2000, VALIC notified GE Capital of its intention to terminate the lease and return the computers and received instructions from GE Capital on the steps to be taken in returning the computers, including guidelines regarding the condition in which the equipment should be returned. Before returning the equipment, VALIC agreed to purchase 50 of the computers, and so was obligated to return only 1,200.

VALIC returned 1,190 computers to a location in Tonawanda, New York, chosen by RFC, who then shipped the equipment to CDI Computer Dealers, Inc., in Toronto, Canada. CDI (a wholly owned subsidiary of RFC) had been retained by RFC to test and audit the computers. After CDI inspected the computers, they prepared a report listing the condition of each unit. Shortly thereafter, RFC sent VALIC an invoice in the amount of $1,186,933.20 for the damage to the computers and for the ten missing computers. For the vast majority of the computers, RFC claimed that the machines were "damaged beyond repair" and assessed VALIC the Stipulated Loss Value of $1,041. Surprised by the amount of the bill, VALIC requested that RFC allow it to inspect the computers to confirm the damage reported by CDI. For most of the computers, VALIC confirmed that the equipment had been damaged. But in the vast majority of instances, VALIC confirmed only that the machines had minor defects, such as missing hinge covers, missing port covers, and cracked cases.

RFC contends in its motion for summary judgment that because VALIC "confirmed" the damage to 955 of the 1190 computers, that there is no genuine issue of material fact with regard to whether those 955 computers were damaged beyond repair, and it is entitled to summary judgment

3

in the amount of 956,976.14. VALIC on the other hand contends that there a genuine issue of material fact with regard to whether the damage to those 955 computers constituted only reasonable wear and tear. Furthermore, VALIC argues that the lease agreement does not allow RFC to claim the stipulated loss value for computers that function when they are returned, and therefore it is entitled to summary judgment with regard to RFC's claim for stipulated loss value. Finally VALIC contends that the lease does not allow RFC to charge continued rent after the computers were returned and therefore is entitled to summary judgment on RFC's claim for continued rent.

## II. Standard of Review

Summary judgment is proper only where the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In analyzing a motion for summary judgment, the Court views all facts and inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, a genuine issue of material fact exists only where the dispute over facts might affect the outcome of the lawsuit and there is sufficient evidence to support a jury verdict for the nonmoving party. *Id.* at 248.

## III. Analysis

### A. *Plaintiffs' Motion for Partial Summary Judgment*

RFC's motion for summary judgment is absurd. It does not follow from the mere fact that VALIC confirmed that 955 of the 1190 computers were damaged that VALIC does not dispute whether the damage was reasonable wear and tear or whether the computers were damaged beyond repair. VALIC submitted an abundance of evidence to suggest both that the damage claimed by

RFC was reasonable wear and tear, and thus no breach of the lease occurred, and that the computers were not damaged beyond repair, and thus RFC was not entitled to the stipulated loss value.

The frivolity of RFC's argument can be captured with a short quotation from its reply brief in support of its motion. In the brief, RFC goes so far as to argue that the defense of reasonable wear and tear is not even available to VALIC. RFC argues that VALIC's reasonable-wear-and-tear defense should be rejected as a matter of law because "[t]he Master Lease required VALIC to return the laptops to RFC 'in the *same condition and working order as when delivered to Lessee* [VALIC] reasonable wear and tear excepted." (Emphasis in brief). RFC's creative use of italics does not change the plain language of the lease. RFC simply *ignores* the final clause of the sentence that makes an exception for *reasonable wear and tear*, precisely the defense asserted by VALIC. RFC's argument that the Master Lease requires VALIC to return the computers in the "*same condition*" as when delivered and therefore affords VALIC no defense for reasonable wear and tear is disingenuous at best.

As noted earlier, the record is replete with facts suggesting that there is a genuine issue of material fact as to whether the damage to the computers constituted only reasonable wear and tear. For example, VALIC submitted deposition testimony that stated that some hinge covers were dislodged at the outset of the lease agreement, suggesting that the loss of hinge covers was an ordinary occurrence. VALIC also submitted evidence to suggest that the stress fractures "took three people and holding the computer in special light and bending the machine in half to see the crack," implying that they were but minor defects that resulted from ordinary use. Furthermore, VALIC submitted a report from an expert suggesting that the damage to the laptops did constitute reasonable wear and tear.

5

RFC offers several reasons why VALIC's evidence is insufficient to create a genuine issue of material fact, none of which are convincing. First, RFC responds that the lease agreement itself defines reasonable wear and tear (and that definition excludes the damage to the computers), but points to no provision of the agreement supporting its position, and the Court finds no definition of reasonable wear and tear within the four corners of the lease. RFC also contends that its expert established the standard of reasonable wear and tear. But VALIC's expert offered a contrary opinion, and it is inappropriate to weigh evidence to resolve a motion for summary judgment. *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002). Finally RFC contends that the standard for reasonable wear and tear is found it its "Equipment Return Memorandum." But the lease agreement, not a document prepared by one party three years after the execution of the contract, governs the terms of the contract. The Court concludes that there is a genuine issue of material fact as to whether the damage to the laptops constitutes reasonable wear and tear, and therefore summary judgment in favor of RFC is not appropriate.

Even if RFC could establish that there is no genuine issue of material fact as to whether the damage to the laptops constitutes reasonable wear and tear, it certainly cannot establish that there is no genuine issue of material fact as to whether the laptops were "damaged beyond repair." RFC contends that it "deemed" many of the laptops to be "damaged beyond repair" because either the cost of repairing the computer exceeded its fair market value or because it could not locate parts to complete the repairs. RFC's argument that it is entitled to the stipulated loss value for the 955 computers that RFC agrees were damaged consists of only one sentence in its brief in support of its motion for partial summary judgment and is not convincing. RFC claims that it is entitled to the stipulated loss value for any computer where the "cost of repairing the piece of equipment exceeded

the fair market value of the equipment in good working condition or the parts were not available to repair the equipment."

Even under the definition proposed by RFC, it would not be entitled to summary judgment. VALIC submitted evidence to show that it had located a vendor to replace missing hinge or port covers at $15/pair. RFC's own evidence (the audit by CDI) ascribed a cost of $20 to many of the missing hinge and port covers. RFC has not established that there is no genuine issue of material fact as to whether the computers *could* be repaired at a cost far less than their fair market value.

But the Court also finds that RFC's interpretation of the phrase "damaged beyond repair" is not a reasonable construction of the lease. The lease agreement does not define the phrase, "damaged beyond repair." Because the lease contains a choice of law provision, the Court must turn to Massachusetts law to construe the lease's language. Under Massachusetts law, the object of the Court is to construe the contract as a whole and give effect to the intent of the parties. *Shea v. Bay State Gas Co.*, 418 N.E.2d 597 (Mass. 1981). The interpretation of an unambiguous agreement is an issue of law for the Court. Contract language must be construed in its usual and ordinary sense. *116 Commonwealth Condominium Trust v. Aetna Cas. & Surety Co.*, 742 N.E.2d 76, 78 (Mass. 2001); *Citation Ins. Co. v. Gomez*, 688 N.E.2d 951, 952-53 (Mass. 1998). A contract provision is ambiguous "only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one. *Citation Ins. Co.*, 688. N.E.2d. at 753. The mere fact that the parties disagree on the proper construction of contractual language, however, does not establish ambiguity. *Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc.*, 645 N.E.2d 1165, 1168 (Mass. 1995).

7

The phrase "damaged beyond repair" appears in the lease's risk of loss provision, which allows the lessor to assess a stipulated loss value upon the lessee upon the occurrence of certain specified events. The plain language of the phrase "damaged beyond repair" does not reasonably support the meaning ascribed to it by RFC—that a computer is "damaged beyond repair" if repairing it is neither convenient nor cost effective. Used as a noun, "repair" means "the act or process of repairing: restoration to a state of soundness, efficiency, or health." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1923 (1986). "Beyond" means "out of the reach or sphere of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 210 (1986). The plain language of the lease thus contemplates assessing the stipulated loss value only when the equipment does not function and cannot be repaired—when it is not in a "state of soundness" and returning it to such a state is "out of reach." Furthermore, the context in which the phrase "damaged beyond repair" further suggests that the only reasonable construction of the phrase is one construing it as referring to computers that are unusable and cannot be repaired. *See Commonwealth v. Brooks*, 319 N.E.2d 901, 905 (Mass. 1974) (language should be construed in light of the words that surround it). The phrase "damaged beyond repair" occurs among a list of contemplated events that would trigger the assessment of the stipulated loss value. This list reads "[i]n the event any Equipment is *condemned, taken, lost, destroyed, stolen, or damaged beyond repair*" the Lessee shall be required to pay the stipulated loss value. Each of the events listed in the risk of loss clause contemplates a terminal act that renders the computer unusable. The Court concludes that the phrase, "damaged beyond repair," is unambiguous and contemplates a computer that *cannot* be fixed or is otherwise unusable.

VALIC submitted extensive evidence to suggest that the missing hinge covers or cracked cases did not interfere with the functionality of the computers. It also submitted evidence that it had

8

been able to locate a vendor to provide hinge and port cover replacements for $15 per pair. RFC's assertion that there is no genuine issue of material fact as to whether computers with missing hinges or cracked cases are "damaged beyond repair" is frivolous. To underscore the frivolous nature of RFC's position, the Court quotes an excerpt from a deposition of RFC's Director of Remarketing:

> Q: The comment is a damaged case and the defect is missing back cover. Am I correct?
> A: That's what it says.
> Q: The FMV or the price that CDI would pay is $220 plus the transfer fee; is that correct?
> A: Correct.
> Q: And the repair cost is $20? Do you see that?
> A: I do.
> Q: Now, the charge back amount is $1,041; is that correct?
> A: Correct.
> Q: Let me ask you, if CDI is willing to pay $200 plus the transfer fee and they can repair or put a new back cover on for $20, why is the charge back $1,041?
> A: Primarily, I don't care what CDI does or what they charge, all right. The equipment is supposed to come back in a condition according to the terms and conditions of the lease. In this particular case, it didn't so the terms and conditions allow me to charge the casualty for that item.

RFC has pointed to no provision of the lease agreement that allows them to charge $1,041 in an instance where the computer is missing a non-vital, purely aesthetic part, such as a hinge cover, that costs less than $20 to replace. The self-serving beliefs of its executives that they are entitled to do so does not change the plain language of the lease.

In short, there is absolutely no merit to RFC's position. Its brief is filled with misrepresentations as to the existence of material facts and misleading excepts from the master lease. Although no motion for sanctions has been filed, the Court cautions RFC that Fed. R. Civ. P. 11(b)(1)(B) allows the Court to raise the issue *sua sponte*, and warns RFC that should it continue to assert positions that are so without merit and continue to mislead the Court by selectively italicizing

the text of the lease, ignoring its plain language, and misrepresenting the facts, it will find itself the recipient of sanctions. RFC's motion for summary judgment is DENIED.

## B. *Defendant's Motion for Partial Summary Judgment*

VALIC filed a cross-motion for partial summary judgment arguing that there is no genuine issue of material fact as to whether the laptops were "damaged beyond repair" and therefore RFC's claims for the stipulate loss value should be dismissed. VALIC also argues that no provision of the lease exists that allows RFC to continue to charge rent if the laptops are returned in a damaged state, and therefore Count II (RFC's claim for rent) should be dismissed with prejudice.

The Risk of Loss provision contains the clause that allows RFC to recover the stipulated loss value for equipment that is damaged beyond repair. As noted above, the Court finds that the Risk of Loss provision is unambiguous and contemplates the recovery of the stipulated loss value *only* when the equipment is rendered unusable and cannot be repaired. The vast majority of RFC's claims involves computers that were missing hinge or port covers or computers that had cracked cases. RFC's own expert testified that the stress fractures "do not impede the device's ability to function," even though they bring into question the integrity of the device. In other words, a cracked case may affect the fair market value of the computer, but does not render it unusable, and thus not susceptible to the "damaged beyond repair" clause of the Risk of Loss provision. Likewise, it is inconceivable that a missing hinge or port cover would render a computer unreasonable. RFC offered no evidence, other than the testimony of its executives who "deemed" these units to be damaged beyond repair, to support its contention that computers with missing hinge or port covers or cracked cases are damaged beyond repair. The Court finds that there is no genuine issue of material fact as to whether the computers with missing hinge or port covers or cracked cases

10

functioned properly. Therefore, summary judgment in favor of VALIC with regard to RFC's claim that computers with minor damage were "damaged beyond repair" is appropriate.

The undisputed facts regarding RFC's disposal of the computers that were allegedly "damaged beyond repair" further supports a grant of summary judgment in favor of VALIC. RFC sold 263 units that it deemed to be in good or repairable condition to CDI for $58,633, or $222.93 per unit. And thus, summary judgment is appropriate with regard to those 263 computers.[1] In August or September 2001, CDI located a buyer for the remaining 926 computers, and provided RFC with a portion of the proceeds from the sale—$49,672 or $53.64 per computer. VALIC submitted evidence that the Orion Bluebook value for the computers had fallen $61 per unit in the Fall 2001. Thus, RFC received nearly the fair market value of those computers—receiving $7.36 less than the bluebook value for those 926 computers. RFC introduced no evidence to suggest that the fair market value of the equipment was greater than $61 per unit. Given that RFC recovered near the fair market value of the computers (a fact which it does not contest), it is difficult, if not impossible, to fathom how they maintain that the computers were damaged beyond repair.

The Court concludes that RFC has introduced no evidence to suggest that any of the computers, other than the 10 laptops it claims were missing, were damaged beyond repair. Therefore, VALIC's motion for partial summary judgment with respect to Count I is GRANTED,

---

[1] In its reply brief, RFC admits that "an error was made in charging VALIC the Stipulation Loss Value for the 113 items of equipment that CDI found could be repaired." (Emphasis added) RFC fails to explain the inconsistency between its sale of 263 computers that it deemed to be in good or repairable condition and its admission that CDI labeled only 113 computers in such condition. The Court, however, finds, that there is no genuine issue of material fact as to whether RFC did in fact sell 263 computers that it deemed in good or repairable condition.

11

excepting those 10 laptops that were missing. Even though some of the computers contained damage other than missing covers or cracked cases, the Court will not engage in a line-by-line review of the CDI audit. To the extent that RFC claims it is entitled to the stipulated loss value for computers that were missing hinge or port covers or for cracked cases, Count I is dismissed. RFC is free to argue that it is entitled to the stipulated loss value for computers that suffered more extensive damage or were not returned.

In Count II of the Complaint, RFC seeks continuing rent for the damaged computers under the Risk of Loss provision of the lease agreement. RFC points to a clause of the Risk of Loss provision that states "[i]n the event of a partial destruction of or repairable damage to any equipment, the Lease shall continue with respect to such Equipment . . . There shall be no abatement of Rent in such an event." First, the Court observes that RFC's reliance upon this clause, which refers to "repairable damage," is inconsistent with its claim that the equipment was damaged beyond repair. Aside from the obvious inconsistency in RFC's claims, its attempt to transform a risk of loss provision into a lease extension provision is preposterous. The Risk of Loss provision places the risk of loss of total destruction of the equipment upon the Lessee, nothing more. It affirms that in the event that the equipment is damaged, the Lessee is not entitled to a reduction in rent. The other provisions of the agreement make this clear. The provision concerning the term of the agreement specifies under what conditions the lease may be automatically extended—when there is no default or where the Lessee fails to give notice. RFC vainly protests that "there is no language in [the Term provision] that *prohibits* the lessor from collecting ongoing rent when the lessee fails to pay for repairs." But neither the Risk of Loss provision nor the Term provision of the lease *authorizes* the Lessor to continue to collect rent after the equipment has been returned or to automatically

12

extend the lease in the even that the equipment is returned in a damaged condition, which is the interpretation offered by RFC. In fact, under Massachusetts law, the right to collect rent is available only with respect to goods "not repossessed by or tendered to the lesser." Mass. Ann. Laws. Ch. 106, § 2A-529(1)(a). RFC's claim that it is entitled to collect rent *after* the return of the equipment has no basis under Massachusetts law or under the provisions of the lease. Therefore, VALIC is entitled to summary judgment with regard to Count II, which is dismissed with prejudice.

## IV. Conclusion

In summary, RFC's motion for partial summary judgment is DENIED in its entirety. VALIC's motion for partial summary judgment is GRANTED in part and DENIED in part. With regard to RFC's claims for the stipulated loss value (Count I) for computers that it failed to return or that had more extensive damage than missing covers or cracked cases, VALIC's motion for partial summary judgment is DENIED. With regard to RFC's claims for the stipulated loss value (Count I) for computers that were damaged only by way of missing covers or cracked cases, VALIC's motion is GRANTED. With regard to RFC's claim that it is entitled to continued rent for the damaged computers (Count II), VALIC's motion is GRANTED. In the end, what remains of RFC's complaint are its claims for the stipulated loss value of missing computers or computers that were not returned in working order and which could not be restored and its claims for the actual cost to repair damage that exceeded reasonable wear and tear.

IT IS SO ORDERED.

12/2/03         Wm. J. Hibbler

13